Next case this morning is 24-8052 Peterson v. Kirsch, counsel for appellant. If you would make your appearance and proceed, please. Thank you, Your Honors. Jason Gay, I'm appearing on behalf of the appellant. Plaintiff, Ms. Melanie Peterson, who is seated at the table today. This comes before the court on two orders, an order of granting, a motion to dismiss, and a judgment dismissing the complaint in total with prejudice. We're asking this court to reverse and remand and allow the plaintiff to amend her complaint after its de novo review. The district court found that Ms. Peterson failed to state a claim, and also evaluated several claims on a statute of limitations basis, and then also addressed four claims in particular, the malicious prosecution, invasion of privacy, which covered several claims, qualified immunity, which also covered several claims, and the abuse of process. The appellant's brief touches on the fair state claim issue in an unpublished opinion, Carol v. Ruth or Roth, 2019 Westlaw 13259869. But the rule that's articulated in that case, and in several cases by this court, is that it's not appropriate to dismiss unless it's futile for the plaintiff to amend. And that is not the case here. It would not have been futile for the plaintiff to amend her complaint, and we don't believe that that was the appropriate resolution of the matter by the district court. This is not cited in either brief, but I would also like to point out to the court, CLV Peacock, 32 Federal 4th, 1011. That's a Tenth Circuit case from 2022. I'm only pointing that case out to the court that it has applied that standard in cases where the plaintiff was represented by counsel. Those cases tend to revolve around pro se litigants who are incarcerated. Well, if you want to put it before us in a formal manner, please file a 28J letter to us on that case. Yes, Your Honor. Let me ask you a question, if I may, about the malicious prosecution claim and the nature of favorable termination, that sort of standard that's at play. Did I read your briefing correctly to take the position that what we should look at is sort of, well, that we should adopt a charge-by-charge analysis of whether there was favorable determination or not? In other words, as part of the plea, there were certain dismissed charges. We would need to look at the nature of these charges individually to determine whether there was a favorable determination on her behalf. Yes, Your Honor. And I believe in the brief it says to Chavarini, V.C. Napoleon, 602 U.S. 556. As the state points out, that was not mentioned by the plaintiff in her response to the motion to dismiss, but that case was actually decided roughly six days after the response to the motion to dismiss was filed. Well, with a case or not a case, the nature of the argument needed to be made if it's going to be preserved, and that's the question I'm getting at. It seemed to me, and you can point me to where I'm wrong, that in the district court briefing, the posture that was taken is that favorable determination turned on the case, and that whether there was a favorable determination was whether the determination actually was favorable to her, looking at the case writ large as opposed to on a charge-by-charge basis. For example, I think when the issue was raised, we'll know if there's a favorable determination based upon the appeal that we may take. Did I understand that correctly, or do you have a different view? I believe you understand the argument correctly, Your Honor, but the other issue with that malicious prosecution claim is that the district court determined that it wasn't right yet because the case had not been resolved in her favor or not in her favor. The district court did look to the state court record, but I would note that the judgment came out immediately after the court took that judicial notice, so there was never an opportunity to be heard. The district court sort of overlooked the search that occurred on 19th of November in 2019. It only looked to the August 10th, 2019 search. Both were mentioned in the brief, or both were mentioned in the complaint. The 19th of November was mentioned in paragraphs 36 and 81, I believe, so there were two searches that led to the various claims, not just the one search that was mentioned in the complaint. The criminal case is problematic because the Wyoming criminal case did not look at searches that took place in places such as Texas, California, and Alaska because Wyoming Game and Fish actually left the state and searched several properties looking for alleged Game and Fish violations before it ultimately resulted. And at one point, as the state district court notes, 21 misdemeanor charges. What was not known to the district court or the parties at the time that they filed their briefs was that this case would then ultimately be the criminal case, would ultimately be resolved with only 10 counts as part of the plea agreement, which leaves at least 11 counts outside of the plea agreement resolved in the plaintiff's favor. Well, that's the point that I was trying to get at. I understand that to be the nature of your argument, but if you didn't make that argument below, why isn't that argument waived? Not only did you not make it below, at least my recollection is that you didn't invoke plain error, which is the nature of our preservation doctrine, and if you don't do that, you're done. I mean, at least for purposes of your entitlement for review, the issue is waived. Well, I would argue that the district court didn't have jurisdiction because the matter was not yet ripe, so it should not have dismissed it with prejudice. Well, it's not a question with it, and for this particular purpose, just to be clear, it's not a question of what the district court did. It's a question of whether the nature of the argument that you're seeking to prevail on now, the idea that if I heard you correctly, there are 11 charges that are on the outside, well, what's the import of those 11 charges? That turns on whether we view the case as a whole or whether we look at those 11 charges. That's your argument here. What I'm saying, and I won't beat a dead horse, but what I'm saying is I didn't see any evidence that you made that kind of argument before the district court. And I believe that's correct, Your Honor. As I pointed out, the Chevron case was decided after that response was filed. Okay. As far as statute of limitations, Your Honor, I started to touch on the 19th of November search, which would have been less than four years prior to the filing of the complaint in this matter. The district court just did not address the fact that there was a later search. It only addressed the one search in its look to the state record. And the reason why it would have only addressed that one search, as I pointed out, is because the 19th of November search occurred in Texas and was not a part of the Wyoming criminal case. So that decision to look to the state court record to discern facts and then take judicial notice of those facts, immediately followed by a judgment, precluded any opportunity for the plaintiff to be heard regarding the judicial notice of those facts and to explain that the district court had failed to look at the 19th of November search and it wasn't in the state record because it was not a search that occurred in the state of Wyoming. And this is, just to be clear, this line of argument you're making now is in the context of the statute of limitations and whether the court correctly ruled against you on the statute of limitations or is this some other argument? No, yes, Chief Judge Holmes, that is correct. Okay. And on the statute of limitations argument is the position that you're taking on appeal that Ms. Peterson did not learn of this sort of the Fourth Amendment violation, if you will, because until Mr. McClure mentioned it to Mr. Hymas or when the discovery, in discovery you found out about that? Yes, Your Honor. The mention of Mr. McClure in September of 21 was the first time that Ms. Peterson was ever aware that the Game and Fish Division might have exceeded the scope of the search warrants. And I know that the case has a lot of mention of the August 10th search, but at that time, arguably even the officers wouldn't have known that they're going to exceed the scope of the search warrants at a later date because they retrieved digital devices, 11 different digital devices that had a lot of information on them and ultimately discovered over three terabytes of data that they had seized from those devices. Even the state prosecutor noted in his motion for the protective order that the discovery evidence was well beyond the scope of the case, and I don't believe that the state has ever made any argument that looking at Ms. Peterson's medical records or nude photos of Ms. Peterson had anything to do with an alleged Game and Fish misdemeanor violation. So the only way that she could have known that they were looking at anything beyond what was alleged or what they alleged they were searching for in the warrants that had to do with Game and Fish violations would have been that first comment by Mr. McClure. But even then, I don't know that that was enough for her to understand that they had exceeded the scope. The first time that she could really know was on October 1st, but either of those dates And October 1st being the discovery date or some other date? The discovery date, or maybe it's October 4th. Okay, all right. I apologize. Well, getting to that, and again, just so I can line up arguments and make sure we're on the same sheet of music, I mean, at least as I understood in the district court, the argument was that she didn't know until it was held unlawful by the court in the criminal case. I believe that argument was made, Your Honor. Well, were these other arguments made? The fact that she did not know is until September is actually in the complaint, Your Honor. Okay. And September being the McClure date? That's correct, Your Honor. Okay. But when the argument was made in a briefing posture before the district court, was it not that she wouldn't have known until it was held unlawful on appeal? I believe that argument was made, Your Honor. Yes. All right. You argued below that the accrual date was May 9th, 2022, and now you argued you abandoned that, as far as I can tell, and now you're arguing, at least in your briefing, that the accrual date was July 26th, 2021. What was that date? I do believe that's in the brief, Your Honor. Right. First of all, I think whatever argument you're making now has been waived because you've abandoned the argument you made below, which was that it was May 9th, 2022. And that was waived in the brief. I realize that, Your Honor. Okay. Can you talk about the, I mean, the district court, I think, found the statute of limitations barred also your privacy claim, but the court also ruled alternatively, obviously, on qualified immunity. And as far as I could see, you didn't make any argument below on either prong of qualified immunity. So didn't you forfeit that argument below? I do know that the – And I think the district court mentioned that. Yeah, I do know that the district court mentioned that, Your Honor. And I believe that the complaint contains enough alleged facts for the reasonable inferences to be made in favor of the plaintiff and allow her an opportunity to amend her complaint. As I mentioned, there is – Well, this isn't about amending the complaint. This is about responding to a qualified immunity motion. And it's your burden to respond and to establish the constitutional violation and the clearly established – Yes, Your Honor, and I believe in the district court – Nature of it. I'm sorry. Go ahead. And I just don't see where you met that burden. I believe in the district court that the decision was made to argue the law on it, but the facts were not sufficiently explored outside of the complaint, Your Honor. Okay. Thank you. And I would like to reserve the one minute for rebuttal. Yes. Thank you, Your Honor. Good morning, Your Honors. Good morning. My name is Timothy Miller. I'm with the Wyoming Attorney General's Office. And in this appeal, I represent Dustin Kirsch, Adam Hymas, and John Demery, who are employees of the Wyoming Game and Fish Department. The district court correctly dismissed the second amended complaint in full, including the remaining claims against the remaining defendants. The unlawful search and seizure claim is barred by the statute of limitations. The invasion of privacy claim is barred by both prongs of qualified immunity. The malicious prosecution claim is barred because plaintiff did not allege that the case had terminated in her favor. And, in fact, based on the record as it is at this moment, it did not terminate in her favor. And then there is a supplemental request to supplement the record that confirms that fact. We have now heard an argument that Well, even in the second supplement, under their theory, if you look at a charge-by-charge basis, then one would have to decide whether those other charges that were dismissed terminated in her favor. Isn't that right? I think it's all counts that were dismissed or dismissed pursuant to a plea agreement as set forth in the record. And so even if you consider those on a count-by-count basis, they were all dismissed pursuant to a plea agreement. And the law, not in this circuit, I recognize, but in other circuits is, is that a dismissal in accordance with a plea agreement is not a favorable termination for purposes of malicious prosecution. So I understand the court's point. Let's imagine a case where the prosecutor just voluntarily gets rid of some counts and goes forward on some others. That's not what happened here. There was a plea agreement, and it's in the supplemental record. And that's how those counts were dismissed. I understand that. The point I'm getting at is simply that it is not as open and shut as at least I understood you to be initially framing it, or as I heard it anyway. The bottom line is it's an open legal issue as to what the implication is of these dismissed counts in a plea agreement, right? It is. In this circuit. It is an open question in this circuit. Okay. Yes. Yes, that's correct. Let me ask a question about the Fourth Amendment claim. I know they searched the lodge, at least by my notes here, on August 10, 2019. Yes. When did they execute the subsequent warrant to search the contents of the devices? Well, there's no subsequent warrant alleged in the Second Amendment complaint. There's nothing in the record on that subject.  The position on the statute of limitations is that on August 10, 2019, there was a search. It's alleged the search went on for six hours. It was alleged below that Ms. Peterson was unlawfully arrested during the search, was unlawfully denied counsel, that the search was very distressing to her family, and that the search was performed pursuant to an invalid warrant. And let me back up for a second. If, in fact, there's nothing in the record, and specifically in the Second Amendment complaint related to the date of the subsequent search of the devices, can we really resolve the statute of limitations issue on a 12b-6? I mean, if the reference point is the complaint. Yes, because an injury occurred on August 10, 2019, when the data was seized. By their theory of the case, that was unlawful. That seizure of, which was no secret to Ms. Peterson, she was there, that seizure of devices that allegedly contained irrelevant information and personal information occurred at that time. That was, by their theory of the case, an unconstitutional injury, along with the other alleged unconstitutional injuries that occurred at that time. What they're getting at is the full extent of the injury. And the law in this circuit is the statute of limitations starts to run when you have an injury, even if the full extent of the injury is not known or predictable. So they say in the brief we had no way of knowing they would do whatever they do. Well, even if the injury is not predictable, that does not start to run against statute of limitations. And so, again, we are also really speculating here. We don't have a second amended complaint that alleges there should have been another warrant. It's just not there. And so we're kind of grasping at creating a claim where there's no factual basis for the claim alleged in the second amended complaint. And the claim is not made at all. I would also, I guess I will address the question of, there is a stray reference, I believe in one paragraph, to a November 9, 2019 search. The district court did address it in a footnote and said plaintiff hasn't alleged any facts regarding this search. I don't, I mean, there's just nothing for me to do with that. Just to be clear, November? I'm sorry, I believe it's November 9 of 2019. Okay, got it. So, what I would say going back is what we've had is an argument to reverse a dismissal of a case that begins with very nearly a concession that the pleading below doesn't state a cause of action, because the argument begins with we should have been allowed to amend. Well, no motion to amend was filed below. There's, again, it's a drive-by, you know, and if you're going to dismiss it, you should amend. That's all we have below. We don't have a motion to amend. We don't have, as required by the local rule, a redlined draft of the proposed amendment and then a clean draft of the proposed amendment that never came up. So that is not an issue. In terms of the search, the argument was waived, the argument that is being made now. It was forfeited by not being made below and because plain error was not alleged in appellant's brief, then it has now been waived. And we have to look at what's going on here, okay? We had this search in April of August of 2019. As the district court correctly ruled, the statute starts running at the time of the search. So in Wyoming, that's four years. For the last two years of that period, Ms. Peterson had lawyers who were arguing the search and seizure was unconstitutional. And for whatever reason, the balance of the time went by. The rest of the limitations period ran and the case was filed too late. That is frankly what happened in this case. And I will say, I don't believe Mr. Gay was involved in this matter during that time period. The court presumes, this court presumes that the statute of limitations starts to run from the date of the action of the police is challenged and that's August of 2019 when the statute ran. Let me just follow up to get clearer on one point.  You addressed our case law speaking of the notion that the clock begins to run at the injury as opposed to when the fullness of the injury is determined. That's your understanding, right? Yes. Okay. My question is, if the unique nature of the injury really here relates to specific photos that were in her electronic material, in other words, this exposure related to herself, her person, why when the search initially took place should she presume that the scope of that search would be a sort of wholesale rummaging through to look at even pictures of her new person? I mean, why would that, why should that, why should the presumption be that that injury, that discrete injury took place at the time of the initial search? Well, I would say that from the moment the pictures or whatever, that those pictures were on the devices that were seized. And it is alleged that they were irrelevant to the wildlife crimes that were suspected. That seizure is an injury. I don't know of any law that divides up the injuries in some way so that we have a discrete constitutional violation. I would also say that according to the Second Amendment complaint, the devices were returned to Ms. Peterson, it either says a few days or several days after the search. So whatever downloading took place, took place within days of this search. I think, you know, once the government has the data, government may look at the data. That's not always true. I mean, you're not supposed to rummage for everything that's in somebody's phone. I mean, the Supreme Court tells us that. I mean, you're supposed to be looking for certain things that are evidence of criminality. When, you know, the notion your phone has an encyclopedic level of things about you as a person. The fact that you have my phone doesn't mean you can look at everything on my phone, does it? No, it does not. And I'm sorry, I used the word may and I didn't mean have lawful authority to. I'm just saying that the government seized the data and could do whatever. And it is alleged that the seizure of that data on August 10, 2019, was unconstitutional. Now we have a new argument on appeal that somehow we have, we're going to date the statute of limitations running from an entirely different date, in some way related to, and I can't figure out how exactly, but in some way related to. Well, do we have the search warrant or the probable cause affidavit here? That, those papers are not in the record. Are they referenced in the complaint? No. I mean, they say a search warrant, that the search was conducted pursuant to a warrant. That's correct. And I mean, I think it's, I'm just, for purposes of my question, I'm going to assume that the scope of the search warrant did not allow the government to look at photos on the phone or personal data that's not related to evidence of criminality. And that would include personal photos in this case. And if I understand your theory correctly, the, a plaintiff or, you know, a person who's been searched and the phone is seized, you know, she has an invasion of privacy claim. It's based on that they looked at information on her device that they should not have. And if I understand your theory, well, the injuries, the seizure, is every person going to have an invasion of privacy claim on the theory that the government's, you know, gone beyond the scope of the search? I think the answer would be no. But the only, the invasion of privacy claim accrues when she knows or should have known that they looked at private information. And that seems to me that would be the accrual of the statute of limitations. That's correct. On the invasion of privacy claim, and I do not believe the district court rules that the statute of limitations had been blown on that issue. The problem with invasion of privacy is they say the only plausible, they say this in their brief, the only plausible allegation we have as to dissemination of the data to other people is dissemination to Peterson in the criminal case. And we have just one straight comment. I am past my time. So if there are no other questions, the appellees request affirmative motion to dismiss. Thank you.  Could you just give him a full minute, please? Yes, Your Honor. Thank you, Your Honor. First, I'd like to go to the fact of, or the question of fact regarding termination in favor. The second supplement does show that the criminal case was ultimately terminated in a plea agreement on a fifth amended complaint in the criminal case, which included only ten counts. I would point the court to document 29, page 157, which is one of the pages from the district court, the state district court's order, which references the 21 counts. Obviously, there were six different criminal informations in that case, with the fifth amended information being the final, and it only included ten counts. So you're talking about information that would be in the second supplement that sought to be introduced? Yes, Your Honor.  So that shows that the state prosecutor abandoned at least 11 counts that were withdrawn or otherwise dismissed, and they were external to the plea agreement. The plea agreement makes it clear that there's nothing additional in there. There was one other point I'd like to address, but I'm out of time, Your Honor. Go ahead and say it. Thank you, Your Honor. So regarding the search on November 19th, those same 11 devices were seized by the state, and that's why they're mentioned together, August 10th and November 19th, because the state re-seized those devices in Texas on November 19th, 2019. There was presumably something wrong with the download, or they otherwise needed to download those devices again, Your Honor. All right. Thank you, Counsel. The case is submitted. As we noted, we'll take a ten-minute break right now, and we will return to the last two cases this morning.